Fabian Ray DELGADO, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–95–00210–CR, 14–95–00211–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 17, 1997.

Bobbi L. Blackwell, Houston, for appellant.

Rikki Burke Graber, Houston, for appellee.

Before SEARS, BILL CANNON and DRAUGHN, JJ.[1]

## OPINION

BILL CANNON, Justice (Assigned).

Fabian Ray Delgado was convicted of two counts of aggravated assault with two enhancement paragraphs and was sentenced to 55 years confinement in the Institutional Division of the Texas Department of Criminal Justice for each conviction. On appeal he brings two points of error. First, he challenges the sufficiency of the evidence to support the convictions. Second, he argues that the trial court's instructions to the jury were erroneous. We find both points of error without merit and affirm the judgment of the court below.

On the night the assaults occurred, appellant, his girlfriend, his brother, and his brother's wife were at Lupito's Lounge. A fight broke out between appellant's wife and another woman at the club. Naomi Castillo, a barmaid, attempted unsuccessfully to break up the fight. Appellant then became in-

---

1. Panel sitting by assignment.

volved and struck one of the women in the face. This angered Edward Sanchez, a patron at the bar, who subsequently joined in the altercation along with appellant's brother, Johnny. Oscar Vasquez, whose father owns the bar, approached the brawl to investigate. He noticed that appellant was standing behind Edward with his hands on him. The two were struggling. Edward testified that he felt something warm on his back near his left armpit, although he was unsure what it was. At that time, appellant was the only person standing behind him. Oscar grabbed appellant and pushed him away from Edward.

While trying to separate the two women, Naomi testified that she saw the individual struggling with Oscar raise a knife with a two to three-inch blade in the air. Appellant swung at Oscar, who thought he had been hit because he felt blood running down his face. Then appellant ran out. Oscar was badly cut on the face and on his left arm. Edward suffered a deep cut near his left armpit, which required surgery and fifteen stitches.

■ Appellant argues that this evidence was insufficient to support his convictions for the assaults because witnesses to the altercation did not clearly identify him as the individual who wielded the knife used to cut Oscar and Edward. We hold, however, that the cumulative force of the evidence was sufficient to support the jury's conclusion that appellant was responsible for the complaining witnesses' injuries.

In reviewing the sufficiency of the evidence to support a conviction, the standard of review is the same regardless of whether the evidence is direct or circumstantial. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim.App.1995). We must examine the entire body of evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* We find that a reasonable juror could conclude beyond a reasonable doubt based on the evidence and testimony of the witnesses that appellant stabbed Oscar and Edward. Thus, we overrule appellant's first point of error.

■ In his second point of error, appellant challenges the court's jury instructions defining the terms "intentionally" and "knowingly." Appellant was charged with aggravated assault, which is a result-oriented offense. *Sneed v. State*, 803 S.W.2d 833, 836 (Tex. App.—Dallas 1991, pet. ref'd). In a result-oriented offense, it is not enough for the State to prove that the appellant *engaged in conduct* with the requisite criminal intent, the state must also prove that the appellant *caused the result* with the requisite criminal intent. *Cook v. State*, 884 S.W.2d 485, 490 (Tex.Crim.App.1994). Thus, when the charge defines the culpable mental state in relation to *both* the nature of the conduct and the result of the conduct, rather than limiting its definition to the result only, the charge is erroneous. *Id.* at 491.

In this case the trial court defined "intentionally" and "knowingly," the requisite mental states for aggravated assault, as follows:

A person acts intentionally, or with intent, with respect to the *nature of his conduct or to a result of his conduct* when it is his conscious objective or desire to *engage in the conduct or cause the result.*

A person acts knowingly, or with knowledge, with respect to the *nature of his conduct* or to circumstances surrounding his conduct when he is aware of the *nature of his conduct* or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a *result of his conduct* when he is aware that his conduct is reasonably certain to *cause the result.* (emphasis added)

Clearly, the charge defined the culpable mental states in both conduct and result-oriented language. Applying the *Cook* rule, we hold that the jury charge administered in this case was erroneous.

Nevertheless, our analysis does not end when we find a mistake in the jury charge. *See id.* Once we establish that there is error in the charge, we must next determine, from a review of the evidentiary record, whether appellant suffered any real harm as a result of the erroneous instruction. *Id.* Our analysis will differ depending on whether appellant has objected to the error in the charge. If appellant has objected to the erroneous

charge, we must reverse if our examination of the record reveals that appellant was harmed by the error. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987). However, when appellant has failed to object to the charge, we must find egregious harm, such that appellant was denied a fair and impartial trial, before we may reverse the trial court's judgment. *Id.*

The factors to consider when assessing harm resulting from a mistake in the jury charge are: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* We may look to the application paragraphs in the charge to determine whether the charge as a whole properly indicated to the jury that, in order to convict, they must find appellant intended, not merely to engage in particular conduct, but to effectuate the particular result prohibited by the result-oriented offense. *Hughes v. State,* 897 S.W.2d 285, 296 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995).

 According to the record, appellant failed to object to the erroneous instruction. Thus, we must find egregious harm before we will reverse his convictions. Looking to the charge as a whole, we find that the application paragraphs instructed the jury that in order to find appellant guilty they were required to find that he intentionally or knowingly caused the prohibited result. Significantly, the "nature of conduct" language used in the court's definition paragraphs was not repeated in the application paragraphs. We hold that this instruction appropriately limited the overbroad language used in the court's definitions and pointed the jury to the proper issue to be resolved in a result-oriented offense. *See id.* at 296–97. Further, the State did not emphasize the "nature of conduct" language from the charge in its jury argument. *Compare Ventroy v. State,* 917 S.W.2d 419, 423 (Tex.App.—San Antonio 1996, pet. ref'd). As a result, we hold that

appellant did not suffer egregious harm due to the erroneous definitions in the charge and was not denied a fair and impartial trial. We overrule appellant's second point of error.

The judgment of the trial court is affirmed.