COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-348-CR

REGINALD LYNN HARRIS APPELLANT

A/K/A REGINALD HARRIS

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION
 
ON APPELLANT’S PETITION FOR

DISCRETIONARY REVIEW

------------

Pursuant to 
Tex. R. App. P
. 50, we have reconsidered our prior opinion upon appellant’s petition for discretionary review.  Our opinion and judgment of January 16, 2003 are withdrawn and the following is substituted.

Introduction

Reginald Lynn Harris appeals his conviction for engaging in organized criminal activity.  Appellant raises twelve points on appeal complaining of the sufficiency of the evidence, the jury charge, and the effectiveness of counsel.  We will affirm.

Background

In the early morning hours of May 31, 2000, Everick Edwards was shot while riding his bicycle home in the “Poly” area of Fort Worth, a neighborhood controlled by a criminal street gang known as the “Crips.”  He was able to describe the vehicle and informed police that he had seen two black males inside the car.  After locating the suspect vehicle, members of the Gang Intelligence Unit stopped it for a traffic violation.  Appellant and his passenger Willie Claiborne, both known gang members, were arrested for traffic warrants.

Later, Edwards identified appellant as the shooter from a photo lineup presented by police.  Appellant was then charged with engaging in organized criminal activity.  A jury found him guilty as charged and sentenced him to ninety-nine years’ confinement. 

Legal and Factual Sufficiency

In points one through four, appellant contends that the evidence is legally and factually insufficient to show that the aggravated assault was committed with intent to establish, maintain, or participate in a criminal street gang and insufficient to demonstrate that the organization to which appellant belonged met the statutory definition of a criminal street gang.  

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.  
Cardenas v. State, 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939  S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis,
 922 S.W.2d at 136.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

A person commits the offense of engaging in organized criminal activity if, “with the intent to establish, maintain, or participate . . . as a member of a criminal street gang,” he commits or conspires to commit aggravated assault.  
Tex. Penal Code Ann. 
§ 71.02(a)(1) (Vernon 2003).  A “criminal street gang” is defined as “three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.”  
Id
. § 71.01(d).

The evidence shows that on the date in question appellant shot Edwards five times.
(footnote: 1)  The drive-by shooting occurred in an area of town known by police to be controlled by a criminal street gang called the “Crips.”  Several witnesses stated that in the month preceding the assault, there had been a series of shootings involving the “Crips” and their rival gang the “Bloods.”  A Blood member died in at least one of these assaults.  “Bloods” were believed to have committed this assault in retaliation for their member’s death.  Such retaliation is not uncommon among gangs and is considered an obligation when a gang member has been assaulted by a rival gang.  Although Edwards contended that he was not a rival gang member, at the time of the shooting, he was wearing colors generally worn by “Crips” members.
(footnote: 2)  He also testified that due to his association with “Crips,” he could have been mistaken for a member. 

Prior to his arrest, appellant had admitted to police that he was a member of the Eastwood Piru’s, a set of “Bloods.”  Although he claimed inactive status with the gang for the three months preceding the shooting and contends that there is no evidence in the record to support the jury’s conclusion that he intended to promote a criminal street gang, he was arrested in the company of another known gang member and was wearing gang colors at the time of his arrest.  He also had a number of tattoos on his body that indicated his membership in the gang.  At least one tattoo signified that appellant claimed to be a “Crip killer.”  Additionally, while in jail, appellant corresponded with another gang member, Elghin MkDaniel.  He addressed the correspondence to “YG Elghin MkDaniel” from “YG Reginald Harris.”  The “YG” was identified by a gang expert as a gang honorific, indicating the rank of the gang member.  “YG” stands for “young gangster.”  To attain the rank of “young gangster,” a gang member must “put in work,” that is, commit a crime.

Officer Wafeeq Sabir, a gang intervention officer with the Fort Worth Police Department, testified as to the definition of a criminal street gang and stated that approximately 330 criminal street gangs are active in Fort Worth, including the “Crips” and the “Bloods.”  Further evidence revealed that the gang had at least four members:  appellant, Willie Claiborne, Elghin MkDaniel, and the member killed during the gang war.  The evidence also revealed that the gang had established ranks, recognition signals (gang signs), distinctive identifying clothing and tattoos, and gang slang or code to be used for identification and communication.  Officer Sabir’s testimony that gang members were involved in the commission of crimes ranging in severity from gas drive-offs to murder as well as his testimony regarding the string of shootings between the “Crips” and the “Bloods” established the gang’s continuous or regular association in the commission of criminal activities.
(footnote: 3)  

From this record, we conclude the evidence is both legally and factually sufficient to establish that appellant, a member of a criminal street gang, shot Edwards with the intent to participate in organized criminal activity as a member of that gang.  
See Roy v. State
, 997 S.W.2d 863, 868 (Tex. App.—Fort Worth 1999, pet. ref’d).  
We overrule points one through four.

Jury Instruction

In points five, nine, and eleven, appellant complains of three omissions in the jury charge:  1) no limitation on the definitions of intentional and knowing to the result of conduct, 2) no definition of “criminal street gang” in the abstract portion of the jury charge, and 3) no instruction on the lesser included offense of aggravated assault.  Because appellant did not object to the charge as submitted by the trial court, we must decide whether “egregious harm” has occurred. 
 Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g);
 see 
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Almanza
, 686 S.W.2d at 171; 
see generally Hutch
, 922 S.W.2d at 172-74.  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.  
Almanza
, 686 S.W.2d at 174.  Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.  
Hutch
, 922 S.W.2d
 
at 171.

The trial court’s failure to limit the definitions of “intentionally” and “knowingly” to the result of conduct does constitute error.  
Delgado v. State
, 944 S.W.2d 497, 498 (Tex. App.—Houston [14
th
 Dist.] 1997, pet. ref’d). However, because these definitions were properly limited by other parts of the charge, the 
trial court’s error does not rise to the level of egregious harm and does not constitute reversible error.
(footnote: 4) 
 Id
. at 499. 

Likewise, the failure to define “criminal street gang” in the jury charge did not result in egregious harm to appellant.  When a statutory definition is not included in the charge, it is assumed that the jury would consider the commonly understood meaning in its deliberations.  
Olveda v. State
, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983) (holding that omission of statutory definition of “in the course of committing theft” from charge not reversible error).  A “gang” is defined as “[a] group of people who associate regularly on a social basis” or “[a] group of criminals or hoodlums who band together for mutual protection and profit.”  
The American Heritage Dictionary 
547 (2d ed. 1985).  The penal code defines a “criminal street gang” as “three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities.”  
Tex. Penal Code Ann.
 § 71.01(d).  Because the common meaning of the term “gang” is much like the statutory definition of “criminal street gang” and the evidence was sufficient to establish that appellant’s gang constituted a “criminal street gang” as that term is statutorily defined, the trial court’s failure to include the statutory definition did not result in egregious harm.  
See
 
id
.

Appellant contends, however, that the jury’s note requesting the definition of organized crime demonstrates their confusion concerning the definition of criminal street gang.  The note read as follows:  “May we have the definition of ‘Organized Crime’ as outlined to the jury panel on the 1
st
 day we met[?] . . .  3 people[,] Tarrant County, etc.”  However, the mere request for a definition, without more, is not an indication of implicit disagreement or confusion.  
See DeGraff v. State
, 962 S.W.2d 596, 598 (Tex. Crim. App. 1998) (holding jury’s mere request for testimony not an indication of implicit disagreement).  Further, there is no evidence in the record to indicate whether the trial court responded to the jury’s request.  Therefore, we cannot say that this factor, standing alone, is sufficient to show appellant suffered egregious harm.

We further conclude that appellant’s complaint that the trial court’s failure to include a jury charge on the lesser included offense of aggravated assault is waived because appellant made no request for the instruction.  
Thomas v. State
, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985); 
Hernandez v. State
, 10 S.W.3d 812, 821 (Tex. App.—Beaumont 2000, pet. ref’d).  

Therefore, we overrule points five, nine, and eleven. 

Ineffective Assistance of Counsel

In points six through eight, ten, and twelve, appellant argues that trial counsel’s assistance was ineffective for failing to request a jury instruction limiting appellant’s culpability to the result of his conduct, to request a definition of criminal street gang in the guilt-innocence jury charge, and to request a jury charge on the lesser included offense of aggravated assault.  Appellant also contends his counsel was ineffective because he did not object to the victim’s repeating a hearsay rumor and elicited damaging testimony during the guilt-innocence phase of the trial.

We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that his counsel’s performance was deficient; second, appellant must show the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id. 
at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.  Our scrutiny of counsel’s performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Id. 
at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

An appellate court is not required to indulge in speculation concerning counsel's decision-making processes or to imagine reasons why counsel acted or failed to act in a particular manner.  
Jackson v. State
, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  Thus, when the record is silent as to counsel's reasons for performing or failing to perform in the manner alleged, we cannot conclude that counsel's performance was deficient.  
Id
.  As the court of criminal appeals has pointed out and this court has noted, the record on direct appeal is generally insufficient to show that counsel's performance was so deficient as to meet the first part of the 
Strickland 
standard.  
Mitchell v. State
, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); 
Thompson
, 9 S.W.3d at 813-14; 
Ex parte Okere
, 56 S.W.3d 846, 855-56 (Tex. App.—Fort Worth 2001, pet. ref'd); 
Patterson v. State
, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.).  We find this to be particularly true in the case now before us.  Appellant did not file a motion for new trial raising ineffective assistance that would have allowed counsel to explain any trial strategy upon which his decisions may have been based.  Because there is no record to show trial counsel's reasons for acting or failing to act in the manner challenged by appellant, we hold that appellant has failed to establish that his counsel's assistance was ineffective.  We overrule points six through eight, ten, and twelve.

Conclusion

Having overruled appellant’s points, we affirm the trial court’s judgment.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: May 1, 2003

FOOTNOTES
1:
Appellant does not challenge the evidence proving that he committed aggravated assault.

2:
Although the victim was wearing a purple shirt at the time of the  shooting, he testified that the majority of his clothing was blue, the color commonly worn by “Crips” members.  In addition, because the shooting occurred at night time in a neighborhood controlled by “Crips,” the purple shirt could have easily been mistaken for blue.

3:
Although Officer Sabir’s testimony regarding the range of crimes committed by gang members was elicited by appellant’s trial counsel during cross-examination, Officer Sabir had already testified regarding three prior shootings involving the “Bloods.” 

4:
The application paragraph properly instructed the jury that they must find beyond a reasonable doubt that appellant shot Edwards with “intent to establish, maintain, or participate as a member of a criminal street gang.”  Further, the paragraph defining aggravated assault required the jury to find that appellant intentionally or knowingly caused Edwards’s injuries by the use of a firearm.