COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-348-CR
 
REGINALD LYNN HARRIS                                                                    
APPELLANT
A/K/A REGINALD HARRIS
V.
THE STATE OF TEXAS                                                                            
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
------------
OPINION ON
APPELLANT'S PETITION FOR
DISCRETIONARY REVIEW
------------
Pursuant to Tex. R. App. P. 50, we
have reconsidered our prior opinion upon appellant's petition for discretionary
review. Our opinion and judgment of January 16, 2003 are withdrawn and the
following is substituted.
Introduction
Reginald Lynn Harris appeals his
conviction for engaging in organized criminal activity. Appellant raises twelve
points on appeal complaining of the sufficiency of the evidence, the jury
charge, and the effectiveness of counsel. We will affirm.
Background
In the early morning hours of May
31, 2000, Everick Edwards was shot while riding his bicycle home in the
"Poly" area of Fort Worth, a neighborhood controlled by a criminal
street gang known as the "Crips." He was able to describe the vehicle
and informed police that he had seen two black males inside the car. After
locating the suspect vehicle, members of the Gang Intelligence Unit stopped it
for a traffic violation. Appellant and his passenger Willie Claiborne, both
known gang members, were arrested for traffic warrants.
Later, Edwards identified appellant
as the shooter from a photo lineup presented by police. Appellant was then
charged with engaging in organized criminal activity. A jury found him guilty as
charged and sentenced him to ninety-nine years' confinement.
Legal and Factual
Sufficiency
In points one through four,
appellant contends that the evidence is legally and factually insufficient to
show that the aggravated assault was committed with intent to establish,
maintain, or participate in a criminal street gang and insufficient to
demonstrate that the organization to which appellant belonged met the statutory
definition of a criminal street gang.
In reviewing the legal sufficiency
of the evidence to support a conviction, we view all the evidence in the light
most favorable to the verdict. Cardenas v. State, 30 S.W.3d 384, 389-90
(Tex. Crim. App. 2000); Narvaiz v. State, 840 S.W.2d 415, 423 (Tex.
Crim. App. 1992), cert. denied, 507 U.S. 975 (1993). The critical
inquiry is whether, after so viewing the evidence, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.), cert. denied, 522
U.S. 844 (1997). This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).
In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1996). Evidence is factually insufficient if it is so weak
as to be clearly wrong and manifestly unjust or the adverse finding is against
the great weight and preponderance of the available evidence. Johnson,
23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all
the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the verdict, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Id. In performing this review, we are to give due
deference to the fact finder's determinations. Id. at 8-9; Clewis,
922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient
only where necessary to prevent manifest injustice. Johnson, 23 S.W.3d
at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). A
proper factual sufficiency review must include a discussion of the most
important and relevant evidence that supports the appellant's complaint on
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
A person commits the offense of
engaging in organized criminal activity if, "with the intent to establish,
maintain, or participate . . . as a member of a criminal street gang," he
commits or conspires to commit aggravated assault. Tex. Penal Code Ann. §
71.02(a)(1) (Vernon 2003). A "criminal street gang" is defined as
"three or more persons having a common identifying sign or symbol or an
identifiable leadership who continuously or regularly associate in the
commission of criminal activities." Id. § 71.01(d).
The evidence shows that on the date
in question appellant shot Edwards five times.(1)
The drive-by shooting occurred in an area of town known by police to be
controlled by a criminal street gang called the "Crips." Several
witnesses stated that in the month preceding the assault, there had been a
series of shootings involving the "Crips" and their rival gang the
"Bloods." A Blood member died in at least one of these assaults.
"Bloods" were believed to have committed this assault in retaliation
for their member's death. Such retaliation is not uncommon among gangs and is
considered an obligation when a gang member has been assaulted by a rival gang.
Although Edwards contended that he was not a rival gang member, at the time of
the shooting, he was wearing colors generally worn by "Crips" members.(2) 
He also testified that due to his association with "Crips," he could
have been mistaken for a member.
Prior to his arrest, appellant had admitted to police that he was a
member of the Eastwood Piru's, a set of "Bloods." Although he claimed
inactive status with the gang for the three months preceding the shooting and
contends that there is no evidence in the record to support the jury's
conclusion that he intended to promote a criminal street gang, he was arrested
in the company of another known gang member and was wearing gang colors at the
time of his arrest. He also had a number of tattoos on his body that indicated
his membership in the gang. At least one tattoo signified that appellant claimed
to be a "Crip killer." Additionally, while in jail, appellant
corresponded with another gang member, Elghin MkDaniel. He addressed the
correspondence to "YG Elghin MkDaniel" from "YG Reginald
Harris." The "YG" was identified by a gang expert as a gang
honorific, indicating the rank of the gang member. "YG" stands for
"young gangster." To attain the rank of "young gangster," a
gang member must "put in work," that is, commit a crime.
Officer Wafeeq Sabir, a gang intervention officer with the Fort Worth
Police Department, testified as to the definition of a criminal street gang and
stated that approximately 330 criminal street gangs are active in Fort Worth,
including the "Crips" and the "Bloods." Further evidence
revealed that the gang had at least four members: appellant, Willie Claiborne,
Elghin MkDaniel, and the member killed during the gang war. The evidence also
revealed that the gang had established ranks, recognition signals (gang signs),
distinctive identifying clothing and tattoos, and gang slang or code to be used
for identification and communication. Officer Sabir's testimony that gang
members were involved in the commission of crimes ranging in severity from gas
drive-offs to murder as well as his testimony regarding the string of shootings
between the "Crips" and the "Bloods" established the gang's
continuous or regular association in the commission of criminal activities.(3)
From this record, we conclude the evidence is both legally and
factually sufficient to establish that appellant, a member of a criminal street
gang, shot Edwards with the intent to participate in organized criminal activity
as a member of that gang. See Roy v. State, 997 S.W.2d
863, 868 (Tex. App.--Fort Worth 1999, pet. ref'd). We overrule
points one through four.
Jury Instruction
In points five, nine, and eleven, appellant complains of three
omissions in the jury charge: 1) no limitation on the definitions of intentional
and knowing to the result of conduct, 2) no definition of "criminal street
gang" in the abstract portion of the jury charge, and 3) no instruction on
the lesser included offense of aggravated assault. Because appellant did not
object to the charge as submitted by the trial court, we must decide whether
"egregious harm" has occurred. Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); see Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996). In making this determination,
"the actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole." Almanza,
686 S.W.2d at 171; see generally Hutch, 922 S.W.2d at
172-74. The purpose of this review is to illuminate the actual, not just
theoretical, harm to the accused. Almanza, 686 S.W.2d at
174. Egregious harm is a difficult standard to prove and must be determined on a
case-by-case basis. Hutch, 922 S.W.2d at
171.
The trial court's failure to limit the definitions of
"intentionally" and "knowingly" to the result of conduct
does constitute error. Delgado v. State, 944 S.W.2d 497,
498 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd).
However, because these definitions were properly limited by other parts of the
charge, the trial court's error does not rise to the level of
egregious harm and does not constitute reversible error.(4)
Id. at 499.
Likewise, the failure to define "criminal street gang" in the
jury charge did not result in egregious harm to appellant. When a statutory
definition is not included in the charge, it is assumed that the jury would
consider the commonly understood meaning in its deliberations. Olveda
v. State, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983) (holding that omission
of statutory definition of "in the course of committing theft" from
charge not reversible error). A "gang" is defined as "[a] group
of people who associate regularly on a social basis" or "[a] group of
criminals or hoodlums who band together for mutual protection and profit."
The American Heritage Dictionary 547 (2d ed. 1985). The penal code defines a
"criminal street gang" as "three or more persons having a common
identifying sign or symbol or an identifiable leadership who continuously or
regularly associate in the commission of criminal activities." Tex. Penal
Code Ann. § 71.01(d). Because the common meaning of the term "gang"
is much like the statutory definition of "criminal street gang" and
the evidence was sufficient to establish that appellant's gang constituted a
"criminal street gang" as that term is statutorily defined, the trial
court's failure to include the statutory definition did not result in egregious
harm. See id.
Appellant contends, however, that the jury's note requesting the
definition of organized crime demonstrates their confusion concerning the
definition of criminal street gang. The note read as follows: "May we have
the definition of 'Organized Crime' as outlined to the jury panel on the 1st
day we met[?] . . . 3 people[,] Tarrant County, etc." However, the mere
request for a definition, without more, is not an indication of implicit
disagreement or confusion. See DeGraff v. State, 962
S.W.2d 596, 598 (Tex. Crim. App. 1998) (holding jury's mere request for
testimony not an indication of implicit disagreement). Further, there is no
evidence in the record to indicate whether the trial court responded to the
jury's request. Therefore, we cannot say that this factor, standing alone, is
sufficient to show appellant suffered egregious harm.
We further conclude that appellant's complaint that the trial court's
failure to include a jury charge on the lesser included offense of aggravated
assault is waived because appellant made no request for the instruction. Thomas
v. State, 701 S.W.2d 653, 656 (Tex. Crim. App. 1985); Hernandez
v. State, 10 S.W.3d 812, 821 (Tex. App.--Beaumont 2000, pet. ref'd).
Therefore, we overrule points five, nine, and eleven.
Ineffective Assistance of Counsel
In points six through eight, ten, and twelve, appellant argues that
trial counsel's assistance was ineffective for failing to request a jury
instruction limiting appellant's culpability to the result of his conduct, to
request a definition of criminal street gang in the guilt-innocence jury charge,
and to request a jury charge on the lesser included offense of aggravated
assault. Appellant also contends his counsel was ineffective because he did not
object to the victim's repeating a hearsay rumor and elicited damaging testimony
during the guilt-innocence phase of the trial.
We apply a two-pronged test to ineffective assistance of counsel
claims. Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999). First, appellant must show that his counsel's
performance was deficient; second, appellant must show the deficient performance
prejudiced the defense. Strickland, 466 U.S. at 687, 104
S. Ct. at 2064.
In evaluating the effectiveness of counsel under the first prong, we
look to the totality of the representation and the particular circumstances of
each case. Thompson, 9 S.W.3d at 813. The issue is whether
counsel's assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error. Strickland,
466 U.S. at 688-89, 104 S. Ct. at 2065. "[C]ounsel is strongly presumed to
have rendered adequate assistance and made all significant decisions in the
exercise of reasonable professional judgment." Id. at
690, 104 S. Ct. at 2066. An allegation of ineffective assistance must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. Thompson, 9 S.W.3d at 814. Our scrutiny
of counsel's performance must be highly deferential, and every effort must be
made to eliminate the distorting effects of hindsight. Strickland,
466 U.S. at 689, 104 S. Ct. at 2065.
The second prong of Strickland requires a showing
that counsel's errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial whose result is reliable. Id. at 687,
104 S. Ct. at 2064. In other words, appellant must show there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. Id. at 694, 104 S.
Ct. at 2068. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. The ultimate focus of our
inquiry must be on the fundamental fairness of the proceeding whose result is
being challenged. Id. at 697, 104 S. Ct. at 2070.
An appellate court is not required to indulge in speculation concerning
counsel's decision-making processes or to imagine reasons why counsel acted or
failed to act in a particular manner. Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Thus, when the record is silent as
to counsel's reasons for performing or failing to perform in the manner alleged,
we cannot conclude that counsel's performance was deficient. Id.
As the court of criminal appeals has pointed out and this court has noted, the
record on direct appeal is generally insufficient to show that counsel's
performance was so deficient as to meet the first part of the Strickland
standard. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.
Crim. App. 2002); Thompson, 9 S.W.3d at 813-14; Ex
parte Okere, 56 S.W.3d 846, 855-56 (Tex. App.--Fort Worth 2001, pet. ref'd);
Patterson v. State, 46 S.W.3d 294, 306 (Tex. App.--Fort
Worth 2001, no pet.). We find this to be particularly true in the case now
before us. Appellant did not file a motion for new trial raising ineffective
assistance that would have allowed counsel to explain any trial strategy upon
which his decisions may have been based. Because there is no record to show
trial counsel's reasons for acting or failing to act in the manner challenged by
appellant, we hold that appellant has failed to establish that his counsel's
assistance was ineffective. We overrule points six through eight, ten, and
twelve.
Conclusion
Having overruled appellant's points, we affirm the trial court's
judgment.
 
                                                                       
JOHN CAYCE
                                                                       
CHIEF JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: May 1, 2003

1.  Appellant does not challenge the evidence proving
that he committed aggravated assault.
2.  Although the victim was wearing a purple shirt at
the time of the shooting, he testified that the majority of his clothing was
blue, the color commonly worn by "Crips" members. In addition, because
the shooting occurred at night time in a neighborhood controlled by "Crips,"
the purple shirt could have easily been mistaken for blue.
3.  Although Officer Sabir's testimony regarding the
range of crimes committed by gang members was elicited by appellant's trial
counsel during cross-examination, Officer Sabir had already testified regarding
three prior shootings involving the "Bloods."
4.  The application paragraph properly instructed the
jury that they must find beyond a reasonable doubt that appellant shot Edwards
with "intent to establish, maintain, or participate as a member of a
criminal street gang." Further, the paragraph defining aggravated assault
required the jury to find that appellant intentionally or knowingly caused
Edwards's injuries by the use of a firearm.