Affirmed and Memorandum Opinion filed April 6, 2004









Affirmed and Memorandum Opinion
filed April 6, 2004.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-00620-CR

_______________

 

GREGG OSCAR CAMPOS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

___________________________________________________

 

On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 915,714

___________________________________________________

 

M E M O R A N D U M   O
P I N I O N

In one issue, appellant, Gregg Oscar Campos, contends the
evidence is legally insufficient to support his conviction for aggravated
assault.  Because all dispositive issues
are clearly settled in law, we issue this memorandum opinion and affirm.  See Tex.
R. App. P. 47.4.

 








Background

The complainant, Maria Rojas, testified that appellant was
her former boyfriend.  They had planned
to reunite.  Accordingly, on June 15,
2002, they spent the day together. 
Eventually, they began arguing because Rojas discovered appellant was
seeing another woman.  Rojas told
appellant she wanted to go home.  They
drove to Houston where they stopped at a gas station a few blocks from Rojas=s home.  At that point, Rojas was angry with
appellant.  She was yelling, and they
continued to argue while inside the station. 
When they went outside, appellant got in his car, but Rojas told him she
planned to walk home.  Rojas then walked
behind the station, and appellant followed her in the car.  Appellant struck Rojas with the car causing
her leg to be pinned between the car and a waist-high steel pole that was next
to the building. Appellant then left the station without assisting Rojas.

Miguel Arellano was at the station at the time of the
incident.  He testified that Rojas and Athe man@ in the car were arguing when he
arrived.[1]  Rojas was screaming and cussing at the man
and appeared to be intoxicated.  While
Arellano was pumping gas on the side of the station, he heard the man yell, Athat=s what you want bitch@ from behind the station.  Arellano ran to the back of the station and
saw Rojas lying on the ground screaming Amy leg, my leg.@ 
Arellano did not see the car strike Rojas.  The operator of the vehicle was already
driving away Amore or less pretty quick.@ 
Arellano called an ambulance and waited with Rojas.








Officer Tyson Hufstedler of the Houston Police Department
domestic violence unit investigated this incident.  He first spoke with Rojas at the hospital
four days after the incident.  However,
she asked if they could speak later because she was immediately concerned about
her leg surgery.  Two days later, Officer
Hufstedler took Rojas=s statement by telephone. 
At trial, Rojas could not remember what she told Officer Hufstedler
about the incident although she initially cooperated and decided to press
charges.  However, she testified
appellant did not intentionally strike her and characterized the incident as an
Aaccident.@ 
She further claimed that any statements she gave the police
incriminating appellant were inaccurate and influenced by the morphine she had
been taking, her anger that appellant was seeing another woman, and her desire
for retribution.

In contrast, Officer Hufstedler testified that when he took
Rojas=s statement, she was coherent and
gave no indication that she was under the influence of medication or angry at
appellant for any reason other than his striking her.  Based on appellant=s hearsay objection, Officer
Hufstedler was precluded from testifying regarding what Rojas told him about
the incident.  However, he testified that
he obtained an arrest warrant for appellant based on Rojas=s statement and on his own
investigation.[2]

Appellant was charged with aggravated assault with a motor
vehicle.  He waived his right to a jury
trial.  The trial court found appellant
guilty of the offense, sentenced him to four years= confinement in the Texas Department
of Criminal Justice, Institutional Division, and assessed a $5,000 fine.  This appeal followed.

Discussion








In one issue, appellant contends the evidence is legally
insufficient to support his conviction. 
In a legal sufficiency challenge, we review the evidence in the light
most favorable to the verdict to determine if any rational fact finder could
have found the essential elements of the crime beyond a reasonable doubt.  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000).  We consider all
evidence presented at trial; however, we do not re‑weigh the evidence or
substitute our judgment for that of the fact finder.  Id. 
During a bench trial, the trial court is the exclusive judge of the
credibility of the witnesses and the weight to be given to their
testimony.  Joseph v. State, 897
S.W.2d 374, 376 (Tex. Crim. App. 1995). If any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt, we
must affirm.  McDuff v. State, 939
S.W. 2d 607, 614 (Tex. Crim. App. 1997).

Aggravated Assault

A person commits the offense of aggravated assault if the
person intentionally, knowingly, or recklessly causes bodily injury to another
and uses or exhibits a deadly weapon during the commission of the assault.  Tex.
Pen. Code Ann. '' 22.01, 22.02 (Vernon Supp. 2004).  Aggravated assault is a result‑oriented
offense.  Delgado v. State, 944
S.W.2d 497, 498 (Tex. App.CHouston [14th Dist.] 1997, pet. ref=d). 
In a result‑oriented offense, it is not enough for the State to
prove appellant engaged in conduct with the requisite criminal intent; the State
must also prove the appellant caused the result with requisite criminal
intent.  Id. (citing Cook v.
State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994)).  A person acts intentionally with respect to
the result of his conduct when it is his conscious objective or desire to cause
the result.  See Tex. Pen. Code Ann. ' 6.03(a) (Vernon 2003).  A person acts knowingly with respect to the
result of his conduct when he is aware that his conduct is reasonably certain
to cause the result.  See Tex. Pen. Code Ann. ' 6.03(b) (Vernon 2003).








Appellant does not dispute that he injured Rojas using a
deadly weapon.[3]  Instead, he contends that none of the State=s witnesses established he intentionally
or knowingly injured her.  However, proof
of a mental state, such as intent, must almost always depend upon
circumstantial evidence. Smith v. State, 56 S.W.3d 739, 745 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d). 
Knowledge and intent can be inferred from the accused=s acts, words, or conduct.  Hart v. State, 89 S.W.3d 61, 64 (Tex.
Crim. App. 2002); see Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim.
App. 1982).

Here, the trial court could infer appellant=s knowledge and intent from his acts,
words, and conduct.  Appellant followed
Rojas behind the station after they argued and she told him she planned to walk
home.  The photographs of the station
show there was space to drive behind the station; yet, appellant struck Rojas
while she was next to the side of the building. 
Further, appellant had to first strike a sidewalk in order to strike
Rojas.  Most significantly, appellant
yelled, Athat=s what you want bitch@ in conjunction with striking her.[4]  Then, he quickly fled the scene without
assisting her.   See Fentis v. State,
582 S.W.2d 779, 780 (Tex. Crim. App. 1976) (holding evidence of flight is some
evidence of guilt and amounts in effect to a quasi admission of guilt); see
also Moore v. State, 11 S.W.3d 495, 500 (Tex. App.CHouston [14th Dist.] 2000, no pet.).

In addition, approximately two months after the incident,
appellant wrote Rojas two lengthy letters. 
In the letters, appellant professed his love for Rojas, apologized for
the incident, and repeatedly begged her to claim the incident was
unintentional.  He promised to give her
his Blazer or help her get another vehicle. 
He also promised to give her some money he anticipated recovering in a
work-related lawsuit.  He attempted to
cite the penal code and differentiate an Aintentional@ criminal offense from an Aunintentional@ civil Aoffense.@ 
He explained, at length, that Rojas could not recover from his insurance
company if she claimed the incident was intentional.[5]   For example, appellant stated:








If you would get ahold of the [illegible] and sign an
affidavit, saying you don=t want to Prosecute, or testify and that it was an
accident, and Drop the charge You would help me, and you would Help
yourself.  Look Maria.  Listen closely.  If you were to drop criminal charges on me,
than [sic] you will then be eligable [sic] to file a >civil= claim against me and my insurance.  And you would win.  But the thing is Maria, you cannot file
charges in 2 courts.  The paper I am
sending explains it . . . Maria, what makes more sense . . . for me to go to
Prison forever, and nobody gets anything . . . Or for you to get the money you
deserve.

 

Appellant contends the letters negate his intent because he stated the
incident was an accident.  However,
appellant=s clear purpose was to persuade, and
manipulate, Rojas to dismiss the charge. 
Therefore, the trial court could infer knowledge and intent from the
letters despite appellant=s claims that the incident was an accident.

Further, although Rojas did eventually testify the incident
was an accident, the trial court was free to disbelieve any part of her
testimony.  See Jackson v. State,
105 S.W.3d 321, 327 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d). 
The trial court could reasonably conclude from Rojas=s initial cooperation with the police
that she believed appellant intentionally struck her but was influenced to
testify otherwise.[6]








Finally, the trial court could also infer knowledge and
intent from the severity of Rojas=s injuries.  See Hart, 89 S.W.3d at 64.  Officer Hufstedler described Rojas=s leg as Apretty much mangled.@ 
She was hospitalized for six weeks after the incident and has had three
subsequent hospitalizations.  At the time
of trial, she had received eight surgeries and was scheduled for another
surgery to remove some infection in the bone, thereby shortening her leg.  She cannot walk without crutches and usually
uses a wheelchair.  She has not been able
to work since the incident.  Accordingly,
the evidence is legally sufficient to support the trial court=s finding that appellant
intentionally and knowingly caused bodily injury to Rojas.

Venue

Appellant also contends evidence is legally insufficient
because the State failed to prove venue in Harris County, Texas.  Failure to prove venue in the county of
prosecution is reversible error.  Black
v. State, 645 S.W.2d 789, 791 (Tex. Crim. App. 1983).  However, unless disputed in the trial court
or the record affirmatively shows otherwise, an appellate court must presume
venue was proved at trial.  Tex. R. App. P. 44.2(c)(1); Jackson,
105 S.W.3d at 328.  We find no indication
that appellant raised the venue issue in the trial court.  Therefore, he failed to preserve his
challenge to venue, and we must presume the State proved venue.  See Tex.
R. App. P. 44.2(c)(1); Jackson, 105 S.W.3d at 328.

Nevertheless, the record affirmatively shows that venue was
proper in Harris County.  Venue need only
be proved by a preponderance of the evidence and may be proved by direct or
circumstantial evidence.  See Tex. Code Crim. Proc. Ann. art. 13.17 (Vernon
1977); Black, 645 S.W.2d at 790. 
Venue for assault prosecutions is in the county where the offense was
committed.  See Tex. Code Crim. Proc. Ann. art. 13.18
(Vernon 1977).  








Appellant asserts that no witnesses provided the address or
street where the gas station was located. 
However, State=s Exhibit 6 is a photograph of the station showing the
address as 738 Lathrop, Houston, Texas 77020. 
We may take judicial notice that this address is located in Harris
County.  See Tex. R. Evid. 201; Braddy v. State,
908 S.W.2d 465, 467 (Tex. App.CDallas 1995, no pet.) (trial court properly took judicial
notice for venue determination that intersection where ambulance picked up
assault victim, area where witness lived, and hospital where victim was taken
are all located in Dallas, Texas); Bender v. State, 739 S.W.2d 409, 412B13 (Tex. App.CHouston [14th Dist.] 1987), pet.
ref=d, 761 S.W.2d 378 (Tex. Crim. App. 1988) (per curiam)
(taking judicial notice on appeal that address and building where offense
occurred are located in Harris County); see also Zarychta v. State, 44
S.W.3d 155, 164 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (recognizing appellate court is
entitled to take judicial notice of a proper fact even where no indication
trial court took judicial notice of the fact). 
Therefore, there is legally sufficient evidence that venue was proper in
Harris County.

We overrule appellant=s sole issue and affirm the conviction.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed April 6, 2004.

Panel consists of
Justices Fowler, Edelman, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  Arellano
identified Rojas at trial because he knew her from their neighborhood, but he
was unable to identify appellant.





[2]  Officer
Hufstedler visited the station and obtained photographs.  The photographs show a blood stain on the
ground where Rojas was struck.  Officer
Hufstedler also determined that appellant had driven a rental car, and it was
abandoned after the incident.  The
photographs of the car show a dent in the left, front corner.





[3]  An automobile
can be a deadly weapon if driven in a manner to endanger lives.  Cates v. State, 102 S.W.3d 735, 738
(Tex. Crim. App. 2003). 





[4]  Arellano did
not know whether appellant yelled these words before or at the very moment he
struck Rojas; nevertheless, his testimony establishes that appellant yelled
these words close to the time that he struck Rojas.





[5]  Rojas
testified she filed a claim with appellant=s
insurance company but did not remember telling the adjuster appellant
deliberately struck her and did not know whether the company had denied her
claim.





[6]  The evidence
was conflicting on whether Rojas received the letters.  At first, Rojas testified she never received
any letters and appellant never promised her anything in return for claiming
the incident was an accident.  However,
she then testified that her sister gave the letters to police.  Officer Hufstedler testified that Rojas gave him
the letters.  The trial court was free to
believe Officer Hufstedler and conclude that Rojas received the letters.  See Jackson, 105 S.W.3d at 327.  Nevertheless, the letters evidence appellant=s intent regardless of whether Rojas received them.